

# Missouri Court of Appeals

## Southern District

### Division Two

SHELTER MUTUAL INSURANCE )
COMPANY, )
 )
    Plaintiff-Respondent, )
 )
v. ) No. SD32567
 ) Filed: 4-30-15
NICHOLE B. BEDELL, )
 )
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Circuit Judge

### AFFIRMED

Nichole Bedell (Bedell) appeals from a summary judgment in favor of Shelter Mutual Insurance Company (Shelter) on Bedell's claim for uninsured motorist coverage. The trial court granted Shelter's motion after concluding that Bedell was not injured in an accident involving an uninsured motor vehicle. We affirm.

### Factual and Procedural Background

In 2010, Bedell lived with her mother in Springfield, Missouri. Bedell owned a Pontiac Grand Am, which was insured by Shelter with a policy period of November 13, 2009 to February 13, 2010. The Grand Am was stolen on January 25, 2010. Bedell

reported it as stolen to the Springfield Police Department on February 13, 2010. On February 15, 2010, Bedell reported the Grand Am as stolen to Shelter. That same day, Shelter provided a rented Chrysler 300 to Bedell as a substitute vehicle.

On February 17, 2010, Bedell was driving the Chrysler 300 eastbound on US 160 near Willard in Greene County. Marie Alexander (Alexander), driving a GMC Envoy westbound on US 160, was approaching from the opposite direction. At approximately 1:05 p.m., Alexander's vehicle crossed the center line and collided head-on with Bedell's vehicle (hereinafter referred to as the collision). Bedell suffered multiple injuries from the collision. Bedell and Shelter agree that Alexander was 100% at fault in causing the collision.

Before the collision, the Envoy driven by Alexander had been insured via an automobile liability policy issued by State Farm with a policy period of September 24, 2009 to March 24, 2010. The policy's liability coverage limits were $25,000 per person and $50,000 per accident. Alexander and her former boyfriend, Cody Anderson (Anderson), were named insureds on the policy. At one time, Alexander and Anderson had lived together. Before the collision, however, they broke up and physically separated.

On January 25, 2010, State Farm sent a letter addressed to Alexander and Anderson notifying them that their auto policy was canceled effective February 7, 2010, for non-payment of premium. The notice stated that the policy could be re-instated by payment of the premium and that the policy holder would "be informed whether your policies have been reinstated and if so, the exact date and time of reinstatement. There is no coverage between the date and time of cancellation and the date and time of

2

reinstatement." At 2:39 p.m. on February 17, 2010, Anderson presented a premium payment on the auto policy to State Farm Agent, Bob Berke. State Farm re-instated the coverage on the Envoy as of 12:01 a.m. on February 17, 2010.

After the collision, State Farm conducted an investigation for approximately one month. The insurer admitted coverage and offered its $25,000 policy limit to settle Bedell's claim against Alexander. Bedell did not accept the settlement offer.

Bedell was a named insured on a Shelter auto liability policy with uninsured motorist (UM) coverage. She also was an additional insured listed on two other policies issued to her mother. In relevant part, all three Shelter policies contain the following definition:

> (50) Uninsured motor vehicle means:
>
> (a) a **motor vehicle** that is not covered by a liability bond or insurance policy, applicable to the **accident**;
>
> * * *
> Uninsured motor vehicle does not mean:
>
> * * *
> (d) a motor vehicle owned or used by a person who meets the requirements of applicable financial responsibility law ....

(Bold emphasis in original.)

In August 2011, Shelter filed the underlying circuit court action requesting a declaration of Bedell's rights and Shelter's obligations under its three policies with respect to the collision. In Bedell's responsive pleading, she took the position that she was entitled to UM coverage because the State Farm policy did not provide coverage. She asserted that the policy was void due to concealment or fraud by Anderson because he was aware of the loss when he paid the reinstatement premium.

3

Thereafter, Shelter filed a motion for summary judgment. In January 2013, the trial court granted summary judgment to Shelter. The judge concluded that Shelter was entitled to judgment as a matter of law because the Envoy operated by Alexander at the time of the collision was not uninsured as defined by Shelter's policy. This appeal followed.

**Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 381-82 (Mo. banc 1993).[1] Whether Shelter's policy provides UM coverage to Bedell involves "the interpretation of an insurance policy, which is a question of law that [an appellate court] reviews *de novo*." ***Karscig v. McConville***, 303 S.W.3d 499, 502 (Mo. banc 2010); *see **Rutledge v. Bough***, 399 S.W.3d 884, 886 (Mo. App. 2013).

**Discussion and Decision**

*Points I and II*

Neither State Farm nor Anderson are parties to this declaratory judgment action. The undisputed facts also show that State Farm has admitted coverage and extended its $25,000 policy limits to settle Bedell's claim. Therefore, the Envoy was not an uninsured motor vehicle, as defined by Shelter's policies. In Bedell's first and second points, she contends the trial court erred by granting summary judgment because the State Farm policy was void due to concealment or fraud by Anderson. Each point assumes that, in this declaratory judgment action, Bedell could have obtained a declaration from the trial

---

[1] All rule references are to Missouri Court Rules (2014). All statutory references are to RSMo (2000).

4

court that the State Farm policy was void based upon a policy defense the insurer itself has declined to assert. In response, Shelter argues that Bedell lacks standing to obtain such declaratory relief since she is neither a party to, nor a third-party beneficiary of, the State Farm contract. We agree with Shelter.

Bedell is not a party to the insurance contract between State Farm and Anderson. As a tort claimant who has neither a written settlement agreement with nor a judgment against Anderson, Bedell also is not a third-party beneficiary of that liability insurance contract. *See State Farm Mutual Auto. Ins. Co. v. Allen*, 744 S.W.2d 782, 785 (Mo. banc 1988); *Mid-Century Ins. Co. v. Wilburn*, 422 S.W.3d 326, 329 (Mo. App. 2013); *Desmond v. Am. Ins. Co.*, 786 S.W.2d 144, 145 (Mo. App. 1989). Because Bedell is neither a party to nor a third-party beneficiary of the State Farm contract, she lacks standing to litigate the validity of that contract. *See Carden v. Missouri Intergovernmental Risk Management Ass'n*, 258 S.W.3d 547, 558-59 (Mo. App. 2008) (only a party or third-party beneficiary to a contract has standing to obtain a declaration of his contractual rights, status and legal relationships); *Am. Econ. Ins. Co. v. Ledbetter*, 903 S.W.2d 272, 275-76 (Mo. App. 1995) (same holding); *St. Paul Fire & Marine Ins. Co. v. Med. Protective Co. of Fort Wayne, Ind.*, 675 S.W.2d 665, 667 (Mo. App. 1984) (noting that "[n]o authority has been cited to this court and we find none which would authorize or grant standing to seek a declaration of rights under a contract to one who is not a party and who has no right to enforce the contract"); *Hardware Center, Inc. v. Parkedge Corp.*, 618 S.W.2d 689, 694-95 (Mo. App. 1981) (noting that the Declaratory Judgment Act does not grant standing to a stranger to the contract to be construed). Moreover, § 527.110 states in relevant part that "no declaration shall prejudice the rights

5

of persons not parties to the proceedings." *Id*. Therefore, the trial court could grant no effective relief because any decision on coverage in this proceeding would not be binding on State Farm or Anderson since they are not parties.

Bedell's reliance on *Adams v. King*, 275 S.W.3d 325 (Mo. App. 2008), as authority for obtaining such a declaration is misplaced. In *Adams*, the UM claimants were involved in an automobile collision with King, a driver from Louisiana whose liability insurance policy had limits of only $10,000 per person and $20,000 per accident. Because those limits were less than Missouri's motor vehicle financial responsibility law, the vehicle qualified as uninsured under Shelter's policy. Shelter took the position, however, that there was no UM coverage because the liability insurer had offered to pay an amount that would satisfy Missouri's requirements. *Id*. at 325-26. The only issue decided in that case was whether any Missouri law required the liability insurer of a non-resident to pay the increased Missouri limits. This Court held that "[t]here is no Missouri law that required [the non-resident tortfeasor] Mr. King to have liability insurance of $25,000 per person and $50,000 per accident." *Id*. at 328. We also pointed out that, in this action involving only the UM claimants and their insurer, we were not addressing "whether [King's] policy was ambiguous and provided coverage to the out-of-state insured." *Id*. at 328 n.2. Therefore, we deny Points I and II for lack of standing.

*Point III*

Bedell's third point presents a different issue which she does have standing to assert. Citing *Rister v. State Farm Mut. Auto Ins. Co.*, 668 S.W.2d 132 (Mo. App. 1984), Bedell argues that State Farm initially denied coverage and only conditionally

extended it by making a settlement offer Bedell did not accept. We find no merit in this argument.

In **Rister**, the UM claimants' policy contained a provision which defined an uninsured motor vehicle to include one whose liability insurer had denied coverage. **Id**. at 133.[2] The liability insurer expressly denied coverage by letter and offered to defend under a reservation of rights. Thereafter, the liability insurer changed its position and made an offer of settlement which was accepted by the claimants. **Id**. at 133-34. This Court held that, "[w]hen a liability insurer, after an initial denial of coverage, extends an offer in settlement, it may be said it has only conditionally withdrawn its denial. However, when such an offer is accepted, the liability insurer no longer denies coverage." **Id**. at 136. Relying on this language, Bedell argues that she is entitled to UM benefits because State Farm's month-long investigation constituted a denial of coverage. We disagree. There was never a denial of coverage by State Farm. After conducting the investigation, State Farm expressly admitted coverage and later offered its $25,000 policy limits to settle Bedell's claim. Therefore, **Rister** is factually distinguishable and provides no support for Bedell's argument. Point III is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCUR

DON E. BURRELL, J. – CONCUR

---

[2] The Shelter policies do not contain a similar provision. Given the basis for our disposition of this point, we need not address the effect, if any, of that difference in policy language.